Final case on our call this morning is agenda number 21, case number 107-416, William D. Maddux v. Rod Blagojevich, etc. Mr. Novoselsky. Thank you. Good morning. May it please the court, David Novoselsky on behalf of William Maddux, judge of the circuit court of Cook County and various voters. May it please the court, counsel. Let me start perhaps in an unusual fashion to tell the court what we are not arguing and not asking for. We are not asking this court to rewrite the statute or to modify a statute. We are simply asking this court not to permit the executive branch to do, quite frankly, what they have done, which is to rewrite and engraft terms upon the statute. The statute as they have applied it for at least the last 16 years, and as they argue in their briefs, and I think is clarified in this reply, is that the wording of the statute says that a judge shall be automatically retired at the expiration of his or her, it says his term, but it's his or her term following the 75th birthday. There is the position taken by the executive branch in applying this is that I'm quoting from page four of their surreply. It says the office expressly permits a sitting judge to finish his term in office. The office thus becomes vacant at the expiration of the judge's term pursuant to the plain terms of the General Retirement Act. Now that is not how the act reads. The act says you finish the term. There is nothing in the act that bars a sitting judge from seeking and becoming retained prior to the expiration of the term. The election code defines expiration of the term, and it makes reference to statutes that talk about retirement. It says the term should be considered as the first Monday in December of the every even-numbered year. The retirement act does not refer to retention, not at all. The election code does not differentiate. The gloss, if you will, the anagus case, which really uses dicta, if you will, because in anagus, the decision was simply that someone over age 75 may run in a general election. And by the way, the attorney general below, and I think we've quoted this extensively, told the trial court that they agreed that this gloss was binding. I quote from Mr. Iappolo, who presented the argument below. The trial judge accepted that. She said, I am bound by the gloss given anagus that you can run in a general election, but you may not run for retention or seek retention. Now, the anagus case didn't deal with retention. The language dealing with retention is obiter dicta, if that's the correct way to pronounce it. But even there, Justice Griman, in delivering the opinion to the court, doesn't focus on retention. It's a passing comment really quoting from, I believe it was Representative Cullerton, during the debates or the discussions as to the present retirement act. Now, the Illinois Constitution, same article, Article 6, Section 12, says the legislature may not restrict or put terms on retention. This statute, and this statute is very simple, both sides have quoted it, simply says you're retired when your term expires, at the expiration of your term. Mr. Veselsky? Yes, sir. Might this court, if we agree with your argument, be put in a position where you could win the battle and lose the war? I think even based on your argument, I think you call it permissive, but you say that the legislature has the right to indicate a mandatory retirement age. No, actually what I say is, I don't say they have a right to have a mandatory retirement age. Oh, to put in a retirement age. They can set a retirement age. Interestingly enough, and I analyzed it for the court, and if you look at the briefs filed by the defendants, they don't really point to anything else. There is nothing in the Constitution or even in the statute that says the legislature may, in effect, well, let's focus on the Constitution. Before you get there, if this court was to look at the first district appellate case in the language you say is dictated, what would stop the legislature from saying tomorrow that the retirement age for judges is 75, therefore precluding a judge not only from seeking retention but also election, which is the status of the law as it's been since that first district case? Well, I don't think they could for this reason. There would be nothing then that would preclude a private citizen, and if you accept the defendant's position, and it's at page four of the reply brief, when you reach age 75, your office is vacant, you're no longer a judge. There's nothing that would prevent any judge, citizen, or anyone else from running, because the Constitution says you can set a retirement age for a judge. It doesn't say anything about what happens once that individual is no longer a judge. There would be nothing to prevent your honor, for example, if the statute was rewritten, and it's not this court, again, would have to. So you could run. You're saying go ahead and run. You're 76 years old. You could run. And then if that statute was enforced, what would prohibit it once you're sworn in to have a forced retirement, for lack of a better term? Because you can't because once you're in office. Once you're in office, the statute would apply that you have to retire when you're 75 or older. Then the statute would have to, instead of referring to a judge, it would have to say no individual may run for judicial office after their 75th birthday, which is not what the Constitution provides.  I don't think that's correct. If they say that you're a judge once you're sworn in. So under your example, the attorney who's running at 80 is eventually sworn in as a judge, and then what would prohibit the statute from applying then and forcing that attorney, now judge, off the bench? I believe that the problem you would have there is that would then prohibit a private individual. You'd have to designate someone who's retired as a, still as a judge. You'd have to then have the Constitution amended to allow a definition of an individual as a retired judge as separate from a private citizen. And I understand, Your Honor, there's a lot of, I'm sorry. You're really saying then that they, you know, we're getting back to the point where you're saying they don't have a right, per the Constitution, to set a retirement age. The Constitution doesn't use, and that's coming back to, first of all, that's not the issue here, of course, and I understand what Your Honor, Your Honor is considering. What if the legislature did something in the future which isn't before the court today? But, to answer the question, there's nothing in the Constitution that uses the word mandatory. So we're really rewriting the Constitution. And, you know, I've heard the Attorney General in many cases and the Executive Branch saying courts don't write legislation. Courts don't change legislation. More importantly, this court is not going to be asked to rewrite the Constitution. If the Constitution said, the legislature may set a mandatory age beyond which no individual may sit as a judge, or sit for election, because that becomes the issue then. Otherwise, you have an 80-year-old individual, brilliant lawyer, runs for judge. He's told, no, that's a qualification for office. The Constitution does say that the legislature may not change qualifications for office. So now what you're saying is the legislature can ignore the Constitution. Because there is nothing in the Illinois Constitution that says quite the opposite. It says the legislative branch may not change qualifications for office. And there is nothing in the Illinois Constitution that says anything about a cutoff age for running for judicial office. All that we're talking about is the Constitution saying the legislature may set a retirement age, not mandatory. They're really asking you, what they're asking you to do in this case, is for this court to rewrite the Illinois Constitution. Mr. Novoselsky, help me out here. What exactly do you think the Constitution means when it says the General Assembly may provide by law for the retirement of judges and associate judges at a prescribed age? Just that, that judges, you can set a retirement age where a judge may retire, where you can encourage a judge to retire. But then when you read it with the language of Section 12, and there is a, which talks about retention and the inability to hit the bar on the legislature setting retention terms. The real problem here is the language, these two provisions don't mesh quite properly. So a constitutional provision can be, is unconstitutional? No, ma'am. The Constitution, I'm saying that the interpretation that the legislature or the executive wants you to put on it is unconstitutional. They're saying that you disregard Section 12. Just assume because, and Judge, I may be able to write a statute. Judge Novak asked me, how would you rewrite it? That's a good question. And you know what, Judge, it's an excellent question, but it's one for the legislature. This court gets pilloried from time to time by various pressure groups, saying this court is writing legislation. This court cannot and should not, as the trial court did, try to strain and figure out how to make legislation work, that frankly is written wrong, if that's what they wanted to do. Look at the debates. The one thing about the Anagus case that's worthwhile is there's a discussion of Representative Cullerton's views. And they decided that, well, you know, the electorate in a general election somehow will know that Judge Maddox, for example, is 75 years old. But they won't know that in a retention election. With all due respect to Representative Cullerton, who I went to school with and he's a friend, there's no basis for that. But the Constitution, that shows you why this statute is wrong. The Constitution clearly says the legislature may not restrict retention. This is not a retirement statute. I said that to Judge Novak and I say that to the court today. It's an anti-retention statute. Because there is nothing in the Constitution that is barred. The Constitution does not permit the legislature to change qualifications for office. If your honor retired from the bench and at age 80 you're still spry, you're still bright, you say, you know what, I'm going to run. There is nothing in the Constitution, this statute, or any statute that could be written, which would prohibit you from running for office. Because then the legislature is changing qualifications for judicial office. So what we're talking about here is interpretation that really is engrafting language on this statute in defiance of the Constitution. Here's how this statute reads according to the executive branch. You may sit until the expiration of your term. The retention election will be completed by November 30th. You'll be certified. Actually the election is, I believe, November 2nd or 3rd. I don't recall the date. November 2nd is my birthday, so perhaps that's a better date. The certification is complete by November 30th. Now, if you look at their brief, page 21 of their brief, they say the office is vacant when the judge reaches the 75th birthday. That's not what the statute says. It says the opposite. Look at page 4 of the cert reply. They concede it. I'll read it again. The office thus becomes vacant at the expiration of the judge's term pursuant to the plain terms of the Retirement Act. That's also what the election code says. Now, there's nothing in this statute. They're reading language in. They're saying the statute says, however, you may not run for retention even if you have been retained and you've begun a new term of office.  That term does not expire until if it's a six-year term or a ten-year term. So the issue before the court today is the interpretation the legislature has put on this. I'm sorry, not the legislature, the executive branch. Where do you find that language? It's not in here. And they say, well, you have to reasonable interpretation of this statute requires it. Otherwise, we don't have mandatory retirement. Well, there's a problem. This court will not, this court has said it repeatedly, will not engraft terms on the plain language of the statute. The best method of interpretation, as this court has said repeatedly, is the plain language of the statute. This statute, I'm sorry. Counsel, could we revisit Justice Thomas's earlier suggestion about what the legislation can and cannot do? Well, yes. And the question is, and I want to make sure I understand you, the Constitution says they can set a retirement age. Yes, sir. And if they just did that, your suggestion is that would not, it could not be mandatory. The Constitution doesn't permit it, but it's never been decided because even the legislature hasn't used the word mandatory. The statute doesn't use the word mandatory. Your suggestion is if there was a statute passed in response to this constitutional provision that the retirement age was 75, the only effect of that would be to suggest to people that it would be a good time to retire. Well, to be blunt, yes. And I'll tell you why. You'd have to then read out Section 12. That's really the problem here. Does that render that term of the Constitution superfluous then? No, unless Section 12 is superfluous. The problem this court faces, and I'm not trying to make light of it, you have two provisions of the Constitution. This court may not disregard either. What the executive branch says is, okay, lookit, logically, the drafters of the Constitution really wanted mandatory retirement. Didn't use the word. If you assert, as they do, and if you agree with them, well, first of all, and again, let me be very blunt, not that I'm ever shy. Yeah, the statute in front of you does not require or does not bar retirement, period. Can the legislature try to draft something later? That's for the legislature. And again, this court gets pilloried constantly for legislation. Now what you're in essence hearing from the executive branch is legislate because this statute clearly, and they say under the plain terms, has no reference to retirement. In order to rule consistent with your view, we have to find this statute unconstitutional. No, sir. You have to find the application in violation of the Constitution. I would suggest this court does not need to strike down the statute, should not strike down the statute, should not qualify the statute. It should apply it by its plain terms. There is nothing in this statute. Without consideration as to the contrary term in the Constitution about retirement. There is no contrary term in the Constitution for mandatory, and I apologize. I don't want to sound like a broken record. Here's the other problem. How do you deal with Section 12? It says you may not qualify retirement. The legislature, I'm sorry, retention. The legislature doesn't even talk about retention in the statute. It doesn't even mention it. It doesn't say, as I said, and of course you may not run for retention. Then it would be perhaps a different argument. They didn't put it in there. The defendant's position is you should assume, you should consider, this is really a case of first impression and contrary to the Constitution. You shouldn't review the statute as written. You should review the statute as perhaps it should have been written with some reference to retention. Perhaps review the statute as the legislature may later, later interpret it or rewrite it, in which case we're ignoring the whole concept of gloss, because then it says if this court interprets the statute in a certain way and the legislature doesn't like it, it changes the law. So what they're really trying to do is get you, frankly, not to fulfill your constitutional role. They want, and the executive branch perhaps from time to time, believes that this court should be a secondary branch of government. Because now what they're saying is. Mr. Novoselsky. Yes, sir. Back to my original question since it's come up again. Because we're going to hear from Mr. Burks in a minute, and I don't want to put words in his mouth. However, I think the precipice this argument walks is you would agree the statute doesn't draw any distinction between running in a retention election as opposed to a general election. There's no reference. Right. So I believe we're going to hear that this court, they also argue with the gloss of an agnostic, if I pronounced that correctly, that they're going to argue that the act is constitutional if this court interprets it to prohibit sitting judges who are 75 or older from running for judge, either by way of retention or a general election. In which case, as I pointed out, then they're attacking the constitutionality of how this statute has been accepted by the legislature for 16 years, for the first time in this court. And they're not defending what has been done. In fact, if you look at the underlying case. Let me stop you. That's a very good point, because they're going to argue that legislative acquiescence isn't the end of the ballgame anyway. But let's talk about that for a minute. One of the ways the legislature, the gloss of an agnostic has been accepted by the legislature, right? You're arguing against that gloss, and so are they. They're saying this court can extend it. You're saying this court should just say that retention is also allowed. Well, no. I was saying that. Because in anagist, they don't pass on retention. They were not dealing with retention. The trial judge agreed with me. It's wording that's in there which has been interpreted. They have interpreted anagist as saying you can't run for retention, where that issue wasn't before the appellate court or the trial court. There is nothing saying we hereby rule that you can't run for retention. If you read the decision, I read it again last night. I read it again this morning. That's the interpretation they're taking. So what we have here is a situation where judges have been told for 16 years, you can't run for retention where it's not in the statute. It's not in anagist. And what we're dealing with here is they're trying to get you to set aside the provision that says, or the interpretation which they've interpreted according to what they told the trial judge, that you can run in the general election, and it's never been decided or even considered until this court. You have no trial court decision on it. You have no development of it. It is attacking the constitutionality of the interpretation for the first time in an appellee's brief. And the Kravis case doesn't talk about it. It says you can support the lower court decision on any basis. This is a constitutional attack. I know it was my question, Mr. Novoselic. I'm sorry. I see the red light is on. I think it was answered, Chief Justice. I would like to reserve some time for rebuttal. Now we get to see if we were right in saying what Mr. Burks is going to say. I'll take odds on it, Your Honor. Thank you. Good morning. My name is Paul Burks. I'm an assistant attorney general, and I represent the defendant, the Illinois State Board of Elections. We ask the court to affirm the judgment of the trial court dismissing plaintiff's complaint, which challenged the constitutionality of the Judicial Retirement Act, because the act is a valid exercise of the General Assembly's constitutionally delegated authority to compel judges to retire at his prescribed age. This case is here on de novo review. There are two questions. What age is prescribed? Excuse me? What age did they prescribe? They prescribed the age of 75, and they permit judges. That's not the retirement age. The retirement age is the expiration of the term in which the judge turns 75. So a judge can serve. The constitution permits, I think, setting a specific retirement age. It does provide. The constitutional provision says the General Assembly may prescribe an age for the retirement of judges. It would be a very narrow, I think, interpretation of that authority to say a judge must resign on his birthday, specifically on his 75th birthday. And even the very first statute that was passed in accordance with this constitutional provision in 1965 said a judge shall retire. Are there other retirement ages set by statute in Illinois? The only one I'm aware of, I can't answer that definitively, but the only one I'm aware of is the Judicial Retirement Act. No police officers? I'll have to defer and provide supplemental authority because I just don't know the answer to the question. Thank you. The first question, the one of constitutional interpretation, is does the Section 15A of the Illinois Constitution allow the General Assembly to set a mandatory retirement age? And this court in Cusack v. Howlett construed the, at the time it was Section 18 of the judicial article, the 1964 amendments to the judicial article, and said that, and described this provision as allowing the legislature to fix a mandatory retirement age for judges. So the court has already interpreted Section 15A to mean that. Now, in 1970, when the new constitution was passed, all of the constitutional history, and it's been provided in the briefs, show that the delegates to the constitutional convention did not, they intended to incorporate that constitutional provision in its entirety into the new constitution. And there were no substantive changes made to it. And they were aware of this court's decision in Cusack v. Howlett. They were aware of the Judicial Retirement Act that existed at that time and that had set a mandatory retirement age, and that judges had retired pursuant to that provision. And they incorporated it in its entirety into the new constitution. Now, the word automatically was taken out of the constitutional provision. In the 1964 version of the constitutional provision, it said, the legislature may prescribe an age at which judges shall automatically retire. But that was taken out by the Committee on Drafting and Style. And this court has held in a number of different cases that what the Committee on Drafting and Style, they don't make substantive changes. Where you look for the substance of the constitutional provision, you look to the delegates and the committees, the substantive committees. Style and Drafting is just to make it flow better. And Style and Drafting apparently thought automatically was redundant, that the provision is so clear on its face that it allows for the setting of a mandatory retirement age, and this court had already held so, that there was no need to put the word automatically in there. So the constitution, I think, the first question, does the constitution allow a mandatory retirement age? It does. It does provide for that. And it's this court's case law and the constitutional history of the provision that provide the support for that finding. Now, any mandatory retirement age is going to impact retention. There's simply no way around it. If the legislature can compel judges to retire pursuant to their constitutional authority, they must. It's inherent in that authority that they can prevent a judge from running for retention to the office. And so the idea that the provisions for retention in 12D are per se inviolable is just not the case. And, again, this court has held in numerous cases, it's true that the provisions for retention in an election are exhaustive, unless the constitution provides the authority for the General Assembly to alter them. And that's what they said in Nachman, what you said, excuse me, in Nachman, Cusack, Hoyne. There's always that caveat that they're exhaustive unless there's a constitutional provision allowing the General Assembly to alter them. And, of course, there is one here. And by exercising it, they necessarily must alter the retention regimen. Now, there's two interpretations of this statute, two plausible interpretations of how the General Assembly implemented their constitutional authority. And they're both valid. The first interpretation is a judge can't run for retention, but a sitting judge could run in an open election for an open judicial seat, even though they had reached 75 while in their term. This interpretation is not contrary to certainly the common usage of the word retirement. People retire and come out of retirement frequently. They retire from being a police officer and they become a security guard. They retire from being a judge and they become an arbitrator. They retire from being a basketball player and they become a basketball player. Retirement has never been considered, or generally it's common usage, to be considered a permanent disqualification from work. So it's certainly consistent with the word retirement that it would allow another avenue for judges to continue to serve. And it's consistent with the way the Constitution conceives of retirement, because in Section 15A, which allows a legislator to prescribe an age. If we decide that your first suggestion is not plausible, one that exists in this case, does that mean that the legislature could, in the next session of the General Assembly, pass an act that set a mandatory retirement age at 75? Certainly. Pursuant to the constitutional provision 15A, the legislature can pass a statute that compels judges to retire at a prescribed age. If the court were to find that this statute for some reason doesn't do that, although it's pretty concise on its face, a judge shall be automatically retired upon the expiration of his term in which he turns 75, I think they could probably follow whatever clues were provided in your opinion and pass one that passed constitutional muster. But we think this one does. Is there any break in time when a judge reaches 75 or at the time of the next election is over 75 and when he runs and should win? There's no break in time. There wouldn't necessarily be a break in time. I'm sorry? There would not necessarily be a break in time. Is that a retirement then? It is within the meaning of the Constitution in the sense that what that judge has done has essentially started over. To become a judge in the first instance, one has to be appointed and then win in a contested election. That's true with every judge no matter any age. When you run for election, you're starting over. That is absolutely correct. When you run for election, you're starting over. Within the meaning of retirement in the Constitution, that would be what this judge is doing, is retiring and then starting over as a new judge seeking an open office. Back to Justice Fitzgerald's question, Mr. Burks. Yes. At least now, since you say there's two plausible explanations, the board takes the position that the provision in question allows a judge to run after 75, right? The board has not taken that position, Your Honor. Are you taking that position? Well, you said it is one of the plausible explanations. And it's constitutional. The way the board resolves issues like that is it would have to have a live controversy. It would have to have a judge who seeks to run in an open election and have an objector who opposes it, who says this judge can't run in this open election. And then it would resolve it. And it's never been faced with that circumstance. Well, you heard my question from Mr. Novoselsky. And then just following up on Justice Fitzgerald, if we found this provision unconstitutional as applied, the legislature could, under your argument, come up with a provision that would no longer allow running for election at 75. Is that right? That's correct. That's correct. But I think before this Court really got to the finding of unconstitutionality, what it would do is it would apply the doctrine of constitutional avoidance. It would say, look, if this interpretation that allows a judge to run in an open seat and succeed himself without any break in service, that doesn't seem to be a plausible reading of the statute. Well, then to avoid that constitutional problem, it would say, well, the statute, the Court should say, well, the statute says a judge shall be automatically retired upon the expiration of his term in which he turns 75. It doesn't say anything about election versus retention. The plain reading of that statute would then have to be that the judge can't run in either. So you're saying if that was the finding of this Court, there may not even be the need for a new provision. The provision then would be interpreted as automatic retirement at 75. It means permanent disqualification from serving as a judge. And that would be, I mean, the case is here under NOVA review, but when you're challenging the constitutionality of a statute, the Court does do everything in its power, read the statute to preserve its constitutionality and adopt the plausible reading of the statute that is constitutional. And since this statute does not on its face distinguish between election and retention, then the plausible reading of the statute, if necessary to preserve its constitutionality, is that a judge can't run in either election. A judge is permanently disqualified from serving as a judge upon reaching the age of 75, upon the expiration of his term in which he reaches the age of 75. Now, that would be perfectly consistent with the authority that's granted in Section 15A of the Constitution. Now Mr. Burke, to interpret it that way as a permanent disqualification from any judicial service, that would conflict with the second sentence of Section 15A, wouldn't it? The one that allows the Supreme Court to, well, the second sentence, I think it does not conflict in the sense that the second sentence seems to suggest that, I'm sorry, I do agree with you, that the second sentence seems to indicate that retirement for purposes of the Constitution is not permanent disqualification, that a judge can continue to serve as a judge if appointed by the Supreme Court to do so. The statute then, I'm sorry. Well, I mean it specifically says any retired judge. Any retired judge, yes. So it does not contemplate that retirement is permanent disqualification. And I think that's then consistent with this first interpretation of the statute, the one that says, look, upon reaching 75, at the expiration of that term, you have to start over. You can be appointed by the Supreme Court to be a judge, or you can run in a contested election to be a judge like any other candidate, but you're retired from your judicial office as of that expiration of the term. And we believe, and that's constitutional as well, that's within the authority that 15A grants. It didn't have to go, I don't think 15A should be read as this very narrow circumscribe. You can only pass a statute that meets, you know, these magic words. I mean it says the legislature shall, I've read the statute a couple of times, but it allows mandatory retirement. And so, you know, in this case, for example, the legislature said, look, for judicial efficiency, let's let them finish out their terms. To honor the will of the electorate that elected them, let's allow them to finish out their terms. Let's not impose a hard birthday deadline for people to retire. And that seems to be a reasonable approach that's encompassed within the constitutional authority of 15A. And that would, and equally, it would be a reasonable approach for the legislature to say, we want to exercise our authority under 15A to prevent judges from running for retention, but we will allow them all the same rights as any other citizen to run in an open election for judicial office. So under that interpretation, it's equally constitutional. Again, if there's a problem with that interpretation, there's an equally plausible one that preserves the statute as is and says you can't run in a contested election either. Interestingly, in this case, the court really does not need to choose because the plaintiff in this case does not want to run in a contested election. So the question isn't squarely presented. The court can presume, we assume for purposes of argument, that the statute allows a judge to run in a contested election and uphold the statute on those grounds. Has the deadline passed for the plaintiff in this case to change his mind? No, it has not. He can circulate petitions in July through October of this year. So pleadings of a moment is of no moment. Well, he pleaded that he has no intention of doing so. And we take the pleadings on their face because this is a motion to dismiss. So as the record stands, Judge Maddox does not intend or does not want to run in a contested election because of the cost of doing so. There was a 65 statute that used 70 years old? That's correct. And again, I guess that keeps with your argument. Retire automatically soon after they reach 70 years old. The 70-year-old statute initially said the first Monday in December, I think, after the judge reaches 70. And so it would be midterm in a lot of cases where judges were compelled to retire. And numerous judges did retire under that statute. It was amended in 1982 and in 1988. The age was extended to 75. The provision allowing the finishing of a term was added.  But substantively, it's the same as was passed in 65 as existed at the time of the Constitutional Convention and was contemplated by the constitutional delegates that they were guaranteeing the constitutionality of that statute by including Section 15A in the Constitution. Interestingly, I think tellingly, the plaintiffs really in their briefs don't really make an argument against the second interpretation of the statute, that the statute applies to both. I'm sorry, they do make an argument. But it's not an argument based on the language of the statute or the history of the statute or the context of the statute or the structure of the statute. It's not a statutory argument. It's an argument based entirely on the notion that this Court is compelled to adopt the former interpretation of the statute, the statute that prevents retention but allows election. And they rely on supposed agency practice, on statements of the Attorney General, on supposed legislative acquiescence. But they never really address why can't, as a matter of de novo review to avoid a constitutional problem, why can't this Court adopt that plausible interpretation of the statute? And all of their preclusion arguments or their preventive arguments, they really are without merit. The ones regarding agency practice in AG statements are both factually wrong. They're simply factually wrong and they're legally irrelevant. They're factually wrong because there is no agency practice that they've pointed to that requires judges to do anything other than not run. And even there's no agency practice there either. I mean, there's just simply no agency practice that they've cited. There's no documents that they've cited. There's no cases that they've cited where the agency has implemented a particular interpretation of the statute. They just don't exist. And as to the Attorney General's comments in the Circuit Court, I think that the comments that are quoted in the briefs by the plaintiffs, I do think they speak for themselves. The Attorney General said under the doctrine of stare decisis, the Circuit Court must adopt, accept the anagnost interpretation of the statute, which at least arguably permits a judge to run in a contested election. And the Supreme Court is not compelled to adopt the anagnost interpretation of the statute because the Supreme Court is not bound by the appellate court. And I don't think anything the Attorney General said at the Circuit Court can alter that fundamental fact of stare decisis. As to the legislative acquiescence argument, the anagnost decision was in 1992. There have been no amendments of any sort to the statute since anagnost. And generally with legislative acquiescence, I mean, it's a presumption that the legislature knows of an erroneous interpretation of its statute, but generally it applies when the legislature is revising the statute anyway, is amending the statute anyway, but doesn't change a former, a previous judicial interpretation. And in this case, you don't have that. And you don't have any practical impact of anagnost. You don't have any cases citing it. It would really strain to presume that the legislature was going to go out and proactively fix a problem that didn't exist by changing the interpretation of the statute. And furthermore, on the question of legislative acquiescence, it's not clear that anagnost held that a sitting judge could run in a contested election. And the legislature certainly can't be bound by dicta. So there's really nothing that would indicate the legislature intended that specific meaning to this statute, based on the principle of acquiescence. So this Court does face that question as a matter of de novo, the interpretation of the statute. There's nothing said by the Attorney General, done by the agency, presumed by the legislature, that cabins this Court's discretion in interpreting the statute. And either interpretation is valid and constitutional. And so for those reasons, we ask that this Court affirm the judgment of the circuit court and uphold the constitutionality of the Judicial Retirement Act. If there are no further questions. Thank you. Mr. Novoselic. Thank you. And I'd like to thank Mr. Burks because I'd like the Court to very carefully consider his argument. Before we do, Mr. Novoselic, not to hit the same nail on the head, but would you address Mr. Burks' argument that if this Court were to determine, as you would have us determine, that 15A does not encompass the retention situation, right? Yes, sir. Is that right? I'm listening to the question. Yeah. Then would this Court then be able to come up with a legitimate constitutional interpretation that says you're right, but to avoid declaring a statute unconstitutional, we will say that what they meant was 75 retention and election, judge is out of the box. That's not my argument because I'm not asking this Court.  Well, actually, his argument is a little different, and his argument should be carefully considered because we now have a concession that there is no mandatory retirement. What he told this Court was there is nothing that would prohibit a judge from running in a general election. Please review the tape. That's what he said. He said, well, I have to concede that if somebody at age 80 wants to run, and they used to be a judge, they just start over. I could finally get my 93-year-old retired judge father out of what's left of my hair and out of my office. I'll tell him to go run again. And trust me, I'll pay his expenses of his election, so will my brother, just to get him out of the office. But the point is he just conceded. Well, if you can run after age 75, and I don't think there is a prohibition, then there is no mandatory retirement. What we're dealing with here is a retention issue. Mr. Burks concedes, and I think it's correct. And just to be fair, Mr. Novoselsky, because he doesn't get to come up here again, I think what he said was that a plausible explanation of the word retirement, definition of retirement, is in retirement, out of retirement. Out of your office, now running for a new office after being retired. Yeah, that's what he said. And basically said that's where the status, in practical terms, is what's been happening all these years. Yes. Okay. But there is nothing, interestingly enough, even Mr. Burks concedes, and I'll call your attention to this, what the argument they're making now is, and I think he did concede, you can run in a general election. And he correctly says, well, Judge Maddox's initial thought was, why should I go through the expense of a general election when the purpose of a retention election is to assist the voters not dealing with partisan issues? More importantly, we're forgetting one very salient point. In order for this court to accept their interpretation as saying, yes, it bars retention, or even, yes, you can't run in a general election, you would then be violating the constitutional provision, which says that then changes the term of office, qualifications. Nothing in the Constitution has an age requirement for term of office, for running for office. It very clearly bars the legislature, which this court pointed out in Nachman. I want to get back to the focus. There was a complaint filed in the Circuit Court of Cook County that challenged the Constitution of the Act as it pertained to retention. As applied. Yes, sir. As applied to the retention of Judge Maddox. That's the only issue in this case. Mr. Burks is saying that to preserve the constitutionality of the provision, this court can say that you are right, but you lose, because to preserve it, we say that the provision means that you can't run for retention nor election at 75. I would respectfully say no, and here's why. There is nothing in the existing Act, nor it's their interpretation. What's going on here is they now want to change term of qualifications for office. The Judicial Act, and we pointed it out, which is why all we're talking about here now is not just retention. They want to broaden it. The legislature under the Constitution may not change qualifications for judicial office, one of which would be age. They're now asking you not simply to rewrite the statute, but to rewrite the Illinois Constitution and set aside. You're being asked to hold the Illinois Constitution unconstitutional. It's as simple and plain. They're saying if you can't run once you reach 75, nobody can run at age 75 if he or she is a retired judge. Where is that in anything in 15a? It's not. Article 6 very clearly says, and does this Court on numerous occasions, legislature cannot change qualifications for judicial office, term of judicial office. What they're saying is when you hit 75, your term is over. That's right against the Constitution. That interpretation is 100% against the Constitution. Now he is saying to you, you should interpret this, or the legislature can now say, you can't run in a general election. That violates the judicial article because then the legislature is changing qualifications for office. Well, okay. Let's look at the provisions. I think I misspoke before, but the constitutional provision, Article 6, 15a, that the General Assembly may provide by law for the retirement of judges, on and on. Then 55.1 of the Act says, and Justice Garmon said it, a judge is automatically retired at the expiration of the term in which the judge attains the age of 75. The way that has been applied is that at 75 you can't run for retention, but you can run for election. Yes, sir. You bring, you challenge the constitutionality of that, and I'm going to keep asking this until I get some type of answer. You challenge the constitutionality of that, and he says that this Court can rule, Well, that's a reasonable interpretation because retirement can mean in retirement, out of retirement. You know, there's a reasonable interpretation there. But if you determine, if we determine that that is not a reasonable interpretation, rather than declare the Act constitutional, you say what that Act means, that a judge is automatically retired at the expiration of the term in which the judge attains the age of 75, and that means, period, no retention, no election to another office. The Court, this is the Supreme Court. I'm not being funny. I've been here since 73, arguing cases. This is the Supreme Court. This Court can say or declare whatever. This is, you are the supreme arbiter of the law. If you did that, you would have to rewrite the constitution because you are then permitting, not simply retirement, but under the guise of this. You know, everybody keeps jumping around saying we have to allow the legislature to have mandatory retirement. Yet, the constitution doesn't say that. But more importantly, the constitution says the legislature may not alter the qualifications or the right to run for judicial office. You are then engrafting on the word retirement, which is a bare word, mandatory, except mandatory retirement conflicts with what consul can seize right now. Anyone can run. We talk about a silly interpretation. Judge Maddox can't run at age 76. A brand new lawyer, you can get your license at age 76. If you meet the minimum requirement, I think it's eight years or ten years, you can run at age 100 and be elected because you're not a former judge. That's plain silly. But more importantly, it violates the constitution, which went out of its way to say the legislature may not change not just qualifications for office, but term of office. Their interpretation, the one they're asking you to say that on age 75, you're done, now says the term of office set under the constitution no longer exists. It's been radically modified. You're making a facial challenge, not an as-applied challenge. No, I'm saying there's nothing in this. Then what does a judge is automatically retired at the expiration of the term in which the judge attains the age of 75? When and how would that be constitutional? It's constitutional right now. A judge may not choose to run for retention. There's nothing saying he has to or she has to. They may choose not to. And they're retired. If they choose not to run for retention, their term is up and they're off the bench. You know, judge, to be blunt, this court doesn't have to clean up sloppy drafting by the legislature, nor if the constitution is subject to various interpretations, this court should not strain to set aside not one but two provisions of the constitution so the legislature can throw judges off the bench. I thought you said, counsel, in response to my questions earlier in your initial argument, that you weren't challenging the constitutionality of the statute. I'm not. You were challenging the executive branch interpretation. Yes, I am. How does that mesh with this discussion you're having with Justice Thomas? Justice Thomas says, well, how do you have retirement if you can still stay on? I'm saying the statute on its face says nothing about the right to run for retention. It doesn't restrict the right on its face. It doesn't restrict it anywhere. There's no case authority that says that, that directly challenges it. By the way, counsel cites a QCAC case for you. This court didn't consider the question of whether mandatory means automatic retirement. That's not correct. So what you're asking is not for a finding of unconstitutionality, but a question of statutory interpretation. Yes. I'm saying that the court should declare that there is nothing in this act that bars a sitting judge from sitting for retention and being retained prior to the expiration of the term. And under the election code, the term is over the first Monday in December of the even-numbered year. In this case, this election would be 2010. There is nothing in this statute, and the court can look at it, that even refers to retention. The executive branch is asking you to read into the statute and graft upon it the following. You may not run for retention, and the provisions of Section 12 saying that we cannot restrict retention, which this court pointed out in Nachman, has no application here because we are restricting retention. On the face of this statute, and I think Justice Thomas is correct, too, they don't talk about whether you can run in a general election. The only thing this statute restricts is retention. So you have a mesh. There's nothing that ever says Article 12 is gone. More importantly, if you go beyond Section 12, you have the provisions of the Act that says the legislature may not change or restrict term of office or qualification for office. What we're really dealing with here is the executive branch's interpretation, not the amicus interpretation. They've fastened on it to do this. They're saying all we have in this statute is an anti-retention statute. How does that mesh with 12? We won't tell you because you must strain to ignore 12 to interpret. Think about it for a second. All of the construction argument you're hearing, I'm asking you to read the plain language of the statute. It says nothing about retention or you can't run for retention or you can. They're the ones asking you to interpret this statute by engrafting language into it, then get around the problem with 12 because everybody keeps ignoring 12. The defendant's brief pretends 12 doesn't exist. They get around the provision saying the legislature can't change term of office. Well, they are. They can't add a qualification for office. They're asking you to change the retention provision, saying you can't restrict retention unless we change the retirement age. There's a lot of stuff being added into this statute that simply doesn't exist. I thank the court for its attention. I thank you for giving me a little additional time. I would urge the court to do as we ask in our brief. Permit judges to run for retention because there is nothing that could or should bar them from doing so. The rationale. Mr. Novoselic. Thank you. Do I have to thank you again? No, don't hit me. Okay, thank you. Now you can sit down. Case number 107-416 will be.